

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

04 OCT 15 PM 2:17

BEVERLY CARTER,            }
                           }
    Plaintiff,             }
                           }    CIVIL ACTION NO.
v.                         }    03-AR-0322-S
                           }
BELLSOUTH TELECOMMUNICATIONS, }
INC.,                      }
                           }
    Defendant.             }

ENTERED
OCT 15 2004

### MEMORANDUM OPINION

On June 15, 2004, this court granted the motion of defendant, BellSouth Telecommunications, Inc. ("BST"), for summary judgment and dismissed the above-entitled action that had been brought by plaintiff, Beverly Carter ("Carter"), pursuant to 29 U.S.C. § 1132, the enforcement provision of the Employee Retirement Income Security Act ("ERISA"). The court simultaneously denied Carter's motion for partial summary judgment wherein she sought to establish a "conflicted arbitrary and capricious standard of review" of BST's denial of disability benefits allegedly due her under a plan admittedly governed by ERISA. The basis upon which this court found that BST's decision was to be examined under the plain vanilla "arbitrary and capricious" standard was that the plan was funded by and through a trust that had an independent trustee.

Carter filed a timely motion pursuant to Rule 59, F.R.Civ.P., challenging this court's use of the standard of review that is much more deferential to the decision-maker than the standard for which



she contends. Upon quick reconsideration, the court found that it was incorrect when it concluded that there was no genuine issue of fact material to the determination of the proper standard of review. Accordingly, the court granted Carter's Rule 59 motion, vacated the judgment and reinstated Carter's claim for wrongful denial of benefits under BST's long term disability ("LTD") plan. To resolve this newly perceived and unresolved issue of fact, the court ordered an evidentiary hearing for the "sole purpose of receiving evidence bearing on the appropriate standard of review".[1] Based on the evidence received at that hearing and the evidence previously in the record, the court makes the following findings of fact and reaches the following conclusions of law bearing on the issue here being addressed.

## Findings of Material Fact

There is no need to restate the undisputed facts set forth in this court's opinion of June 15, 2004. Except for the findings the court now makes that differ from those facts, those facts remain undisputed. Because the recent evidentiary hearing was limited in scope, this recitation of facts will only include the facts that are material to the determination of the proper standard for

---

[1] The Rule 59 motion did not affect the dismissal of Carter's claim for wrongful denial of benefits under the separate pension plan. Only the claim for benefits under the LTD plan is before the court.

2

reviewing BST's decision to terminate Carter's LTD benefits.

The LTD plan invoked by Carter names BellSouth Corporation ("BSC"), the parent corporation of BST, as the plan administrator and sponsor of the plan, and names BSC, BST, and various Employee Benefit Claim Review Committees ("EBCRCs") as fiduciaries. EBCRCs are committees established by BSC and its subsidiaries to review claims for benefits submitted by their respective employees. BST, here the defendant, established an EBCRC to review claims by its employees, who include Carter. Section 10.6 of the LTD plan provides:

> <u>Final Authority</u>: The EBCRC (and its delegates) has complete discretionary authority to determine Benefits and to interpret the terms and provisions of the Plan. Such determinations and interpretations shall be final and conclusive.

Effective September 3, 1996, the EBCRC for BST "delegated to Kemper [Kemper Risk Management Services] ['Kemper']. . . . the duty to grant or deny initial claims for benefits under the plan. . . ." But, that delegation contained the following limitation: "The EBCRC will continue to review, on appeal, denied claims". This language granted Kemper the same degree of discretion that the EBCRC had, and no more. Kemper became, in fact, the *alter ego* of the EBCRC, which, in turn, was the *alter ego* of BST. No argument has never been made in this case, either by plaintiff or by defendant, that Kemper, as claims administrator, or BSC as plan administrator, or any of the various EBCRCs, or State Street Bank

3

and Trust Company ("State Street Bank"), the "trustee" referred to in the opinion of June 15, 2004, or any of the said entities, was, in fact, a real fiduciary and/or decision-maker and thus an indispensable party defendant. In other words, the parties are in agreement that the only proper defendant is BST. This procedural fact is significant.

The LTD plan is funded by contributions from BST and other BellSouth affiliates to a so-called irrevocable trust as to which State Street Bank is "trustee". It is the existence of a trust that was the determinative fact upon which this court relied in its opinion of June 15, 2004. The court has now taken another look at the issue. According to the terms of the trust instrument, BSC has total discretion to determine the timing and frequency of contributions by the various BSC affiliates to the trust. BSC contracts with a consulting firm to calculate the contributions necessary to maintain a funding level in the "trust" sufficient to cover all current claims and to maintain a reserve for incurred but not reported claims. During the course of a given year, if claims materially exceed the contributions to the "trust", an interim calculation is made in order to determine how much each participating company must increase its contribution in order to insure sufficient funds for paying claims. In other words, the entity responsible for meeting payment obligations to Carter and similarly situated employees under the LTD plan is actually BST,

the employer, and not the "trust". The "trustee" makes no management or investment decisions. BST **must** pay money into the trust if the payouts ever exceed the amount in the trust. Under these facts, the word "trust" is a misdescription. Carter is accurate in critically calling it a "pass-through". The "trust" exists only for the mechanical purpose of making payments to plan participants in the various employee benefit plans, including the LTD plan here involved. It is like a simple checking account replenished by the depositor just before it is overdrawn. It is an elaborate illusion.

When Kemper, the claims administrator, approves an application for benefits, an authorization of payment is sent to State Street Bank which routinely sends the payment to the beneficiary. State Street Bank exercises no discretion whatsoever. It cannot and does not employ independent judgment of the sort that a real trustee would employ. Its role is simply to follow the direction it receives and to disburse accordingly. The trust agreement expressly provides that State Street Bank can only "make such payment as BellSouth directs." There is no real difference between State Street Bank, as a "trustee", and the State Street Bank that does business as a depository bank in the business of honoring checks to the extent the check writers have sufficient funds in their checking accounts.

Not only is the transparency of the "trust" now obvious to the

5

court, but there is additional evidence that ultimately persuades the court. It is found in the affidavit of Crystal Miller, a knowledgeable BST employee. Her affidavit was first filed in an earlier case pending in this court, *Jamie Lunsford v. BellSouth Telecommunications, Inc., et al.*, CV-02-C-0960-S. It was again submitted by Carter as evidence in this case. It was drafted by counsel for BST. In it Ms. Miller, with personal knowledge and without equivocation, testified:

> BellSouth's STD and LTD plans are self-funded. When an employee is determined to be eligible for STD or LTD benefits, the benefits are paid from Company revenues. The Company does budget for expected STD and LTD benefits payments but benefits are never denied to eligible employees simply because the budgeted amounts have been exceeded. There is no established "fund" or "pool" from which benefits are paid and, consequently, there is no danger of claims being denied because of benefit funds being exhausted or spent, at least so long as BellSouth is a viable ongoing business entity.

In other words, the entity responsible for paying benefits that are due is the employer. What Ms. Miller said in her affidavit is more credible than what she said during her disclaimer at the evidentiary hearing. It is apparent not only from the paper trail but from what Ms. Miller said in her affidavit that any payment of benefits can adversely affect BST's bottom line. It is further apparent that the court misconstrued the relationship between BST and State Street Bank when it wrote its opinion on June 15, 2004.

At the risk of repetition, BST not only has the power to control the disposition of an individual LTD claim, but it has a

financial stake in the decision. There is such a clear connection between BST's profit-making obligation to its parent corporation, BSC, that the court can reach no conclusion other than that BST was operating under a conflict of interest.

Finally, at the evidentiary hearing held on August 30, 2004, the court pointedly asked counsel for BST for a rational justification for BST's use of a "trust" instead of a simple bank account for paying claims, if they had one. Counsel were unable to provide any convincing reason. Whether or not BST's purpose in creating a "trust" was to make it more difficult for an LTD plan beneficiary to challenge a denial of benefits is unnecessary to this decision. If such was BST's purpose, BST did not accomplish that purpose. It would have accomplished that purpose but for Carter's Rule 59 motion.

## Conclusions of Law

Having found as a fact that a conflict of interest existed when BST or its surrogates decided to terminate Carter's benefits, the court now reviews that decision under Carter's suggested "heightened arbitrary and capricious standard" rather than under the more deferential standard that the court erroneously applied when it granted summary judgment for BST. Eventually, as the court applies this heightened standard, the court must rule on the merits of Carter's claim in light of the LTD plan language and the

administrative record supporting her claim.

The court has already determined that there was a rational basis for BST's decision to terminate Carter's LTD benefits. On this subject, the court has not changed its mind. However, under the proper standard of review, a rational basis for the decision-maker's decision is not enough to uphold its decision.

The most recent apposite decision by the Eleventh Circuit has several interesting and informative features. *Williams v. BellSouth Telecommunications, Inc.*, 373 F. 3d 1132 (11th Cir. 2004), was decided on June 16, 2004, one day after this court rendered its judgment in the instant case. In other words, this court did not have *Williams* available when it reached the conclusion it erroneously reached on June 15, 2004. The second interesting feature of *Williams* is that BST was the defendant-employer in that case, just as it is in this case. The third is that Kemper was a defendant in *Williams*, whereas it is **not** in this case. A careful reading of *Williams* may explain why Kemper is not a party to Carter's action. In *Williams*, BST interposed Kemper as an independent administrator or decision-maker, allegedly insulating it from a review of a denial decision, except under the most deferential standard. The Eleventh Circuit in *Williams* recognized that Kemper was, in fact, no more than an arm or agent of BST and ignored it, just as this court is now ignoring State Street Bank.

Instead of claiming that Kemper is an indispensable party and

8

interposing it as an insulator as it did in *Williams*, BST has interposed State Street Bank as its alleged independent insulator. State Street Bank had less involvement in the decision to deny Carter than Kemper had, either here or in *Williams*. In fact, State Street Bank had **no participation whatsoever** *vis-a-vis* Carter. The EBCRC never sent an authorization to State Street Bank to pay Carter, so, for aught appearing, State Street Bank has never even heard of Carter.

More important to this case than the Eleventh Circuit's discussion in *Williams* of the relationship between Kemper and BST, is the fact that *Williams* reiterated what the Eleventh Circuit had earlier held in *Brown v. Blue Cross and Blue Shield of Alabama*, 898 F. 2d 1556, 1566 (11th Cir. 1990), namely, that if a plan administrator is operating under a conflict of interest, it assumes the burden of proving that its plan interpretation and its decision on a claim under the plan were not tainted by self-interest. In *Brown* the Eleventh Circuit was the first appellate court to recognize the problem inherent in *Firestone Tire & Rubber Co. v. Bruch* , 489 U.S. 101, 109 S. Ct. 948 (1989), in situations where an ERISA plan decision-maker, although granted the fullest discretion possible in the plan instrument, has a financial interest in the outcome. In *Brown*, the Eleventh Circuit held:

> In summary, we face for the first time (since *Firestone*) how to reconcile the inherent conflict posed by benefits determinations made by an insurance company

administering its own policy. While *de novo* review is an attractive avenue for controlling the exercise of discretion contrary to the interest of beneficiaries, the application of this strict standard would deny Blue Cross the benefit of the bargain it made in the insurance contract. *See Firestone*, 109 S. Ct. at 954. The *Firestone* court firmly endorsed the ability of parties to "agree [] upon a narrower standard to review." *Id.* at 956. At the same time, we must control the tension between contractual standards of review and an interpretation of ERISA that "would afford less protection to employees and their beneficiaries than they enjoyed before ERISA was enacted." *Id.* We therefore hold that the abuse of discretion, or arbitrary and capricious, standard applies to cases such as this one, **but the application of the standard is shaped by the circumstances of the inherent conflict of interest.**

*Id.* at 1562-63 (footnote omitted) (emphasis supplied).

* * * * *

In accordance with the foregoing common law principles, we hold that **when a plan beneficiary demonstrates a substantial conflict of interest** on the part of the fiduciary responsible for benefits determinations, **the burden shifts to the fiduciary to prove that its interpretation of plan provisions committed to its discretion was not tainted by self-interest.** That is, a wrong but apparently reasonable interpretation is arbitrary and capricious if it advances the conflicting interest of the expense of the affected beneficiary or beneficiaries **unless the fiduciary justifies the interpretation on the ground of its benefits to the class of all participants and beneficiaries.**

*Id.* at 1566-67 (footnote omitted) (emphasis supplied).

* * * * *

...[e]ven a conflicted fiduciary should receive deference when it demonstrates that it is exercising discretion among choices which reasonably may be considered to be in the interest of the participants and beneficiaries. The fiduciary, however should **bear the burden of dispelling the notion that its conflict of interest has tainted its**

10

> **judgment**.  If the fiduciary carries this burden, the party challenging its actions may still succeed if the action is arbitrary and capricious by other measures. This second level of evaluation is assisted somewhat by the narrowing of the justifications which the fiduciary may properly assert in defense of its actions.

*Id.* at 1568 (emphasis supplied).

Without the benefit of *Williams*, another court within the Eleventh Circuit recently evaluated an ERISA administrative decision under the heightened arbitrary and capricious standard of review occasioned by a conflicted decision-maker who had been granted wide discretion.  In *Hagberg v. Liberty Life Assurance Company of Boston*, 321 F. Supp. 2d 1270 (N.D. Fla. 2004), Judge Mickle dealt with a claim for long-term disability under an ERISA employee benefit plan.  The administrator had full discretionary authority, but had an economic interest in its decision.  It made that decision against the claimant.  The court found that while there was a reasonable basis for the denial of benefits, the administrator did not prove that its decision was not tainted by the existing self-interest, while on the other hand, claimant had presented evidence upon which it could reasonably be found that he was disabled within the definition of eligibility in the plan. This court agrees with Judge Mickle's analysis.

This court also notes the well reasoned but unpublished opinion of Judge Propst of this court in *Grubbs v. The Prudential Insurance Company of America*, CV-01-PT-2505-E, wherein on February 9, 2004, Judge Propst found that reasonable proof of continuing

11

disability had been provided by the plaintiff and that the defendant had failed to prove that its termination of benefits, while within the range of reasonableness, was not tainted by self-interest. This court finds persuasive what Judge Propst there said. To like effect is *Fought v. UNUM Life Ins. Co.*, 379 F. 3d 997 (10th Cir. 2004), decided on August 13, 2004, by the Tenth Circuit. *Fought* is well written, but no more persuasive than what Judge Mickle or Judge Propst said.

The burden of proof was not upon Carter to prove that BST's decision was "arbitrary and capricious", as those words are usually understood. Instead, the burden was on BST to prove that its decision was not tainted by the conflict of interest under which it was clearly operating, or, in other words, that its decision benefitted all participants in the LTD plan. It did not meet that rather considerable burden. BST spent all of its effort trying unsuccessfully to prove that it had no conflict of interest. It never attempted to prove that its decision was not tainted by self-interest.

Because a plausible reading of the LTD plan and of the administrative record bearing on the merits of Carter's claim for LTD benefits supports her claim, and because BST has not met its burden of proving that its denial was not tainted by self-interest, Carter, as a matter of law, is entitled to the benefits she seeks. An appropriate separate order to this effect will be entered.

DONE this __15th__ day of October, 2004.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE